UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.: 17-CV-20034-KW

MEGAN ADAMESCU, an individual

    Plaintiff,

v.

The CITY OF MIAMI BEACH, a political subdivision and PHILLIPE ARCHER, an individual,

    Defendants

**AMENDED COMPLAINT**

## INTRODUCTION

1. This is a civil rights action filed on behalf of Megan Adamescu whose rights under the First, Fourth, Fifth and Fourteenth Amendments to the United States Constitution were violated when she was wrongfully arrested by Defendant Phillipe Archer, a Law Enforcement Officer employed by the City of Miami Beach, Florida. Adamescu's same Constitutional rights were violated when she was physically beaten at two separate places at two separate times on June 26, 2013 by Defendant Phillip Archer. Adamescu was beaten so badly by Archer at the time of her arrest that Andrew Mossberg, a citizen of Miami Beach, Florida, called 911 to report what appeared to him to be an unidentified male beating a woman. Archer, who was on duty but was not wearing a uniform, momentarily stopped beating Adamescu, and falsely arrested Mossberg, breaking his jaw in the process of the arrest.

2. After Adamescu was beaten at the scene of her arrest she was taken to the police station of the City of Miami Beach Police Department, Miami Beach Florida. While in a "sally port" area of the police station, with her hands securely cuffed behind her back, Adamescu was punched in the face

by Phillipe Archer. As other police officers went to restrain Archer, he kicked and attempted to strike Adamescu again.

3. This is an action for money damages brought pursuant to 42 U.S.C. Section 1983, the First, Fourth, Fifth and Fourteenth Amendments to the Constitution of The United States, and under the common law of the State of Florida against the City of Miami Beach and Phillipe Archer.

## JURISDICTION AND VENUE

4. This action arises under federal law and the First, Fourth, Fifth and Fourteenth Amendments to the United States Constitution.

5. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. Sections 1331 and 1343 and on the supplemental jurisdiction of this court to entertain claims arising under state law pursuant to 28 U.S.C. Section 1367. 5. Venue is proper in this district because it is where the events complained of occurred.

6. The Defendant City of Miami Beach is a municipal corporation in the State Of Florida.

7. The Defendant Phillipe Archer is a law enforcement officer working as a Police Officer for the City Of Miami Beach and is otherwise *sui juris*.

8. The Plaintiff Megan Adamescu is a resident of Miami-Dade County, Florida.

9. All conditions precedent to the maintenance of this action have been performed or have occurred prior to its institution including those set forth in Florida Statute Chapter 768.

## THE PARTIES

10. Plaintiff Megan Adamescu is thirty-two years of age. At the time of the incident she was twenty-nine years of age and a professional model who was employed for photographic and television work wherein she is paid to appear in advertisements to promote apparel or products.

11. Defendant City of Miami Beach ("City") is a political subdivision of the State of Florida.

12. Defendant police officer Phillipe Archer ("Archer") was at all times relevant to this complaint a certified law enforcement in the State of Florida. At the time of this incident he was a duly appointed and acting as a police officer of the City of Miami Beach Police Department, acting under color of law, to wit, under color of statutes, ordinances, regulations, policies, customs and usages of the State of Florida and/or the Miami Beach Police Department.

13. At all material times, Defendants City of Miami Beach and Archer were engaged in unconstitutional activity, including excessive force acts, that was the proximate cause of the violations of Plaintiff's federally protected rights and the damages suffered therefrom.

## STATEMENT OF FACTS

**A. June 26, 2013: The Arrest on West Avenue**

14. On June 26, 2013, Admasecu went to the apartment building located at 800 West Avenue, Miami Beach, Florida to visit a friend.

15. Adamescu had previously lived at the apartment.

16. Adamescu was attempting to retrieve some personal property.

17. Adamescu was refused entry to the building.

18. Adamescu was asked to leave the premises of the building by an employee who may have called the police.

19. Defendant Phillipe Archer responded to a call and appeared in the area of the building.

20. When Archer encountered Adamescu he was working in an undercover capacity and was not wearing a recognized police uniform.

21. At approximately 6:20 p.m., Archer confronted Adamescu. Adamescu did not know who Archer was.

22. Archer went through Adamescu's purse.

23. Adamescu tried to prevent Archer from going through her purse.

24. Archer punched Adamescu with his fist in her face.

25. Adamescu fell to the ground.

26. Archer took Adamescu's head and hit it against the pavement.

27. At the time Amadescu was five feet, nine inches tall, and weighed approximately one hundred and fifteen pounds.

28. Adamescu was wearing a short skirt and a sleeveless shirt.

29. The incident was witnessed by Andrew Mossberg.

30. Mossberg was an individual unknown to Adamescu at the time of the incident.

31. Mossberg saw Archer strike Adamescu in the face and he called 911.

32. Mossberg saw Adamescu fall to the ground after Archer struck her.

33. Mossberg saw Archer kick Adamescu while she was on the ground.

34. Mossberg yelled at Archer to stop and told him that he just had called the police and that the police were on the way.

35. In response, Archer immediately charged at Mossberg and kicked Mossberg in the head.

36. Mossberg was instantly knocked to the ground.

37. While Mossberg was on the ground, Archer punched him in the head and body numerous times.

38. Archer handcuffed Mossberg, who was bleeding from the face and head, and placed him into custody.

39. Archer arrested Mossberg and charged him with battery on a law enforcement officer, resisting an officer with violence, obstruction of justice and disorderly conduct.

40. Archer arrested Adamescu and charged her with battery on a law enforcement officer, resisting a law enforcement officer with violence, obstruction of justice, and disorderly conduct.

41. Mossberg has filed suit against Defendants City of Miami Beach and Phillipe Archer which is pending before this court in *Mossberg v. City of Miami Beach Police & Phillipe Archer*, 15-24632 CV KMM.

**B. The Sally Port of the City of Miami Beach Police Department**

42. Adamescu was taken to the City of Miami Beach Police Department.

43. Adamescu was standing with her hands cuffed behind her back in the presence of at least four City Of Miami Beach Police Officers in the Sally Port area of the City of Miami Beach Police Department.

44. Archer walked by Adamescu, and punched her in the face. This caused Adamescu's head to strike against a cement piling.

45. Archer then kicked Adamescu and attempted to then strike Adamescu again but was prevented from striking Adamescu by other City of Miami Beach Police Officers who restrained Archer.

46. At some point Adamescu was taken to the emergency room of Mt. Sinai hospital for the injuries she suffered from being beaten on two separate occasions by Archer.

47. Adamescu was booked into the Miami-Dade County Jail on the felony and misdemeanor charges contained in the arrest affidavit written by Archer.

48. Adamescu did not strike Archer and did not unlawfully obstruct or interfere in the performance of Archer's lawful duties as a police officer.

49. Upon being properly served and notified by the State Attorney to appear, Defendant Archer failed to attend a pre-filing conference at the State Attorney's Office and thus failed to provide sworn testimony to the prosecuting authorities as to the allegations of alleged criminal conduct that he made in the sworn arrest affidavit against Adamescu.

50. On August 15, 2013, the State Attorney of Miami Dade County dismissed all charges against Adamescu.

51. As a direct and proximate cause of the acts of the defendants, Adamescu suffered damages which include physical injury, physical pain and suffering, mental anguish and distress, loss of liberty, humiliation, embarrassment, damage to reputation, loss of income, and the violation of her constitutional rights.

**C. Defendant Archer's History of Misconduct and Civil Rights Violations**

52. During the course of the Defendant City's employment of Defendant Archer, the City Of Miami Beach became aware, or should have become aware, of information that Defendant Archer was unfit to serve in the capacity of a police officer, that he posed a danger to the public, and that he had repeatedly violated the civil rights of those he was sworn to serve.

53. Prior to June 26, 2013, the City was on notice of Archer's repetitive use of excessive force and his proclivities to violate the civil rights of others based on the complaints that were filed against Archer. The routine use of brutal force is a customary practice within the City and as such, is a tacit policy adopted by the Defendants. The following cases were filed prior to the date Adamescu was arrested and beaten by Archer in this case.

54. *Duquesne v. Miami Beach, Phillipe Archer, et al.*, 12-CIV-20575 (S.D. Fla. 2012). Archer was sued on February 13, 2012, in federal court for false arrest, battery/excessive force and malicious prosecution pursuant to 42 U.S. C. § 1983 and state common law. In *Duquesne*, Archer accosted the plaintiff while he was buying a newspaper. Archer, in plain clothes, did not present himself as a police officer. Plaintiff walked away and Archer followed him in an unmarked car. Concerned that he was being followed by a criminal, the plaintiff approached a Miami Beach police car for help. That officer detained plaintiff. Archer and a third Miami Beach police officer caught up to plaintiff. The plaintiff was then arrested and taken to the police station where he was beaten by Archer and another officer. Archer swore to false statements which led to a criminal prosecution against the plaintiff. The plaintiff was incarcerated for nine months awaiting trial. On the day of the plaintiff Duquesne's trial in criminal court, Archer failed to appear to testify and the charges were dismissed. On October 30, 2012, a settlement of the federal lawsuit against Archer was reached wherein the City paid money damages to resolve the claims against Archer.

55. *Lawson v. Miami Beach, Phillipe Archer*, et al., 12-CV-22244 (S.D. Fla. 2012). On June 14, 2012, Archer was sued in federal court for civil rights violations. In *Lawson,* Archer and two other Miami Beach officers confronted the plaintiff, a lawyer, while he was leaving a nightclub. Archer and the other officers detained plaintiff based on a complaint by the club's manager. When the plaintiff identified himself as an attorney and asked for the legal basis for the officers' actions, Archer and the officers placed him under arrest and handcuffed him. A criminal case was initiated against the plaintiff and the criminal court judge, upon reviewing the arrest affidavit, found there was no probable cause for the arrest and the charges were dismissed. Plaintiff Lawson brought suit against Archer alleging retaliation in violation of the First Amendment and false arrest in violation of the Fourth Amendment.

On October 30, 2012, a settlement of the federal lawsuit against Archer was reached wherein the City paid money damages to resolve the claims against Archer.

56. *Moulin and Moulin v. Phillipe Archer, et al.*, 12-CV-23390 (S.D. Fla. 2012). On September 17, 2012, Archer was sued for civil rights violation in state court and the case was removed to federal court. The plaintiffs, father and son, were on vacation on Miami Beach. As the father was paying for parking on South Beach at a parking machine, Archer, who was acting undercover, and another officer in plain clothes detained his two sons without reasonable suspicion while the sons were waiting for their father at a park bench a short distance away. When the father walked back and saw his sons surrounded by Archer and now three other plain clothes officers, he demanded to know what was going on. Archer and the other officers physically attacked the father and struck him repeatedly in the face. Archer and the other officers also used excessive force by choking and striking the son. Father and son sued Archer and the other officers for false arrest and excessive force in violation of the Fourth Amendment. In April 2013, a settlement of the federal lawsuit against Archer was reached wherein the City paid money damages to resolve the claims against Archer.

57. *Azor v. City of Miami Beach, Archer, et al.*, 13-18052 CA 08. On May 21, 2013, Archer was sued in Miami Dade Circuit Court for civil rights violations arising from a police involved shooting. Archer was one of a number of police officers who fired more than 115 rounds into a tourist's car during Memorial Day weekend in 2011, killing the driver and wounding at least five innocent bystanders. Azor, the mother of the deceased, brought suit on behalf of her son's estate. The case was removed and is presently pending in federal court. One of the bystanders, Carlson St. Louis, also sued Archer after a bullet shattered his femur and pelvis. That case has been consolidated with Azor and is also currently pending.

58. In the year preceding June 26, 2013—the day Archer physically attacked and falsely arrested Adamescu, Defendant Archer was sued in four (4) separate cases for civil rights violations involving excessive force. Three of those cases resulted in monetary settlements. All of the cases involved allegations of false arrest and excessive use of force by Archer.

59. The City of Miami Beach paid thousands of dollars in settlements and attorney fees in the Duquesne, Lawson and Moulin cases.

60. The Duquesne, Lawson, Moulin and Azor cases, all filed in 2012 and 2013, were not Defendant Archer's first experience as a defendant in a civil rights lawsuit.

61. In *Porto v. Vazquez, Archer, Miami Beach, et al.*, 99-CIV-2484, Archer was sued for civil rights violations including false arrest, malicious prosecution and excessive force in federal court. In *Porto,* the plaintiff and his wife were in a parking lot having an argument. There was no evidence that the argument involved violence or the threat of violence. The wife was seated in the driver's side of the car and her husband, the plaintiff, was standing outside the car. Archer, who was dressed in plain clothes, along with other Miami Beach officers, grabbed plaintiff from behind and beat him. Archer swore to false statements in an arrest affidavit, alleging that plaintiff had used violence against the police and had resisted the officers with violence. The criminal charges were subsequently dismissed by the State Attorney. A settlement of the federal lawsuit against Archer was reached wherein the City paid money damages to resolve the claims against Archer.

62. Prior to June 26, 2013, Defendant Archer had been the subject of seven (7) citizen complaints for misconduct involving excessive force and false arrest. Yet, the City continued to permit Archer to use excessive force against civilians, creating an unwritten custom or practice of the City.

63. On three separate occasions prior to June 26, 2013, Defendant Archer was administratively cited by the police department for ignoring and failing to respond to subpoenas to

testify in court proceedings where he was either the arresting officer or a material witness, as he did in this case and in the *Duquesne* case.

64. In furtherance of its responsibility to supervise Archer and in response to Defendant Archer's conduct – in particular, his being sued four (4) times for civil rights violations involving excessive force in the one-year period prior to his attack of Mossberg – the City of Miami Beach was aware of Archer's vicious beatings to citizens and did nothing with regard to Archer.

65. No matter how egregious Archer behaved, the City did not fire, reprimand, discipline, counsel, reassign or re-train Defendant Archer prior to June 26, 2013, creating a custom or practice of excessive force. Defendants were deliberately indifferent to the Constitutional rights of Adamescu.

## COUNT I
### False Arrest against Defendant City of Miami Beach

66. Plaintiff Adamescu realleges paragraphs 1 through 65 and incorporates them by reference herein.

67. Defendant City of Miami Beach is responsible for the conduct of its police Officers who are acting in the course and scope of their employment.

68. On June 26, 2013, Plaintiff Adamescu was arrested by Defendant Archer, a Miami Beach police officer who was acting in the course and scope of his duties as a police officer.

69. Such seizure physically deprived Adamescu of her freedom and liberty.

70. The restraint and arrest and multiple beatings of Adamescu was unlawful and unreasonable in that it was not based upon lawfully issued process of Court.

71. As a result of the actions of Defendant Archer, for which Defendant the City of Miami Beach is responsible, Plaintiff Adamescu suffered damages.

72. Pursuant to Fla. Stat. § 768.28(9)(a), the City is not "liable in tort for the acts or omissions of an officer, employee, or agent committed while acting outside the scope of her or his employment

or committed in bad faith or with malicious purpose or in a manner exhibiting willful and wanton disregard of human rights, safety or property."

73. As permitted by Fed. R. Civ. P. 8(d), in the alternative to the contrary allegations set forth in this Complaint, Plaintiff Adamescu alleges that Defendant Archer committed the tort of false arrest, but not in bad faith or with malicious purpose, nor in a manner exhibiting willful and wanton disregard of human rights, safety, or property.

74. Vicarious liability should be imposed on the City of Miami Beach for the Defendant Archer's acts of false arrest to the extent allowed by law.

75. Pursuant to §768.28, Florida Statutes, Plaintiff notified Defendant City of Miami Beach of this claim prior to filing this action and said claim was not resolved.

WHEREFORE, Plaintiff respectfully requests this Court to award (a) reasonable and appropriate compensatory damages (b) Plaintiff's costs, expenses and reasonable attorney's fees, and (c) such other and further relief as this Court deems necessary and proper.

## COUNT II
### Battery against Defendant City of Miami Beach

76. Plaintiff Adamescu realleges paragraphs one through sixty-five and incorporates them by reference herein.

77. Defendant City of Miami Beach is responsible for the conduct of its police officers who are acting in the course and scope of their employment.

78. Defendant Archer, while acting in the course and scope of his employment as a police officer, did unreasonably and unlawfully touch or strike and batter Plaintiff Adamescu at the City of Miami Beach Police Station at the scene where she was arrested by Archer. Said battery was against the will of Plaintiff Adamescu, and without her permission or consent.

79. As a result of the actions of Defendant Archer, for which Defendant the City of Miami Beach is responsible, Plaintiff Adamescu suffered damages.

80. Pursuant to Fla. Stat. § 768.28(9)(a), the City is not "liable in tort for the acts or omissions of an officer, employee, or agent committed while acting outside the scope of her or his employment or committed in bad faith or with malicious purpose or in a manner exhibiting willful and wanton disregard of human rights, safety or property."

81. As permitted by Fed. R. Civ. P. 8(d), in the alternative to the contrary allegations set forth in this Complaint, Plaintiff Adamescu alleges that Defendant Archer committed the tort of battery, but not in bad faith or with malicious purpose, nor in a manner exhibiting willful and wanton disregard of human rights, safety, or property.

82. Vicarious liability should be imposed on the City of Miami Beach for the Defendant Archer's acts of battery to the extent allowed by law.

83. Pursuant to §768.28, Florida Statutes, Plaintiff notified Defendant City of Miami Beach of this claim prior to filing this action and said claim was not resolved.

WHEREFORE, Plaintiff respectfully requests this Court to award (a) reasonable and appropriate compensatory damages, (b) Plaintiff's costs, expenses and reasonable attorney's fees and (c) such other and further relief as this Court deems necessary and proper.

## COUNT III
**42 U.S.C. §1983 Fourth and Fourteenth Amendments Violation against Defendants for False Arrest**

84. Plaintiff Adamescu realleges paragraphs one through sixty-five and incorporates them by reference herein.

85. While Defendant Archer was acting under color of law as a police officer for the City of Miami Beach, he deprived Plaintiff Megan Adamescu of rights secured to her under the Fourth and Fourteenth Amendments to the United States Constitution.

86. Defendant Archer unlawfully and without probable cause seized and arrested Adamescu.

87. Plaintiff Adamescu suffered damages as a result of being falsely arrested.

88. The conduct of Defendant Archer violated Adamescu's established right to be free from an unreasonable seizure and unlawful arrest as guaranteed by the Fourth and Fourteenth Amendments to the Constitution of the United States and for which 42 U.S.C. § 1983 provides a remedy.

WHEREFORE, Plaintiff respectfully requests this Court to award (a) reasonable and appropriate compensatory damages against Defendants, (b) punitive damages against Defendant Archer only, (c) Plaintiff's costs, expenses and reasonable attorney's fees pursuant to 42 U.S.C. § 1988, and (d) such other and further relief as this Court deems necessary and proper.

## COUNT IV
### 42 U.S.C. § 1983 Excessive Force against Defendants

89. Plaintiff Adamescu realleges paragraphs one through sixty-five and incorporates them by reference herein.

90. This cause of action is brought by Plaintiff Adamescu against Defendants for the excessive use of force under color of law that deprived Plaintiff Adamescu of her rights under the Fourth Amendment to the United States Constitution.

91. Without legal cause or justification, Defendant Archer used physical force against Plaintiff Adamescu that was excessive, unnecessary, and unreasonable in violation of the Fourth Amendments to the United States Constitution.

92. As a direct and proximate result of Archer's actions, Adamescu suffered damages.

WHEREFORE, Plaintiff respectfully requests this Court to award (a) reasonable and appropriate compensatory damages against Defendants (b) punitive damages against Defendant Archer only, (c) Plaintiff's costs, expenses and reasonable attorney's fees pursuant to 42 U.S.C. § 1988, and (d) such other and further relief as this Court deems necessary and proper.

## COUNT V
**42 U.S.C. §1983 First and Fourteenth Amendment Violation for Retaliation against Defendants**

93. Plaintiff Adamescu realleges paragraphs one through -sixty-five and incorporates them by reference herein.

94. While Defendant Archer was acting under color of law as a police officer for the City of Miami Beach, he deprived Plaintiff Megan Adamescu of rights secured to her under the First Amendment to the United States Constitution.

95. Defendant Archer unlawfully and without probable cause arrested Plaintiff Megan Adamescu and subjected her to unnecessary force. Such actions by Defendant Archer were taken in retaliation for Plaintiff's lawful exercise of her rights under the First Amendment when she spoke to Defendant Archer and he retaliated by battering her and arresting her.

96. The conduct of Defendant Archer violated Plaintiff Adamescu's clearly established right to free speech as guaranteed by the First and Fourteenth Amendments to the Constitution of the United States and for which 42 U.S.C. § 1983 provides a remedy.

WHEREFORE, Plaintiff respectfully requests this Court to award (a) reasonable and appropriate compensatory damages (b) punitive damages against Defendant Archer, (c) Plaintiff's costs, expenses and reasonable attorney's fees pursuant to 42 U.S.C. § 1988, and (d) such other and further relief as this Court deems necessary and proper.

## COUNT VI
## Negligent Supervision and Retention against Defendant City of Miami Beach

97. Plaintiff Adamescu realleges paragraphs one through sixty-five and incorporates them by reference herein.

98. The Defendant City has a duty to protect individuals from the acts of false arrest and excessive force by the police officers the City employs.

99. During the course of the City's employment of Defendant Archer, the City knew or had reason to know that Defendant Archer had a history of misconduct indicating that he was unfit to serve as a police officer; that he had a history of committing civil rights violations involving excessive force, battery, and false arrest; and, that he posed a danger to the public.

100. The City breached its duty of reasonable care by: a) retaining Defendant Archer as a police officer; b) failing to discipline Defendant Archer for committing acts of misconduct including excessive force and false arrest against members of the public; c) failing to train and/or retrain Defendant Archer; and d) failing to reassign Archer to a position where he would not pose a threat to the public; e) failing to properly supervise and counsel Archer.

101. As a direct and proximate cause of the wrongful acts and omissions of the Defendant City, Plaintiff Adamescu suffered damages.

WHEREFORE, Plaintiff respectfully requests this Court to award (a) reasonable and appropriate compensatory damages, (b) Plaintiff's costs, expenses and reasonable attorney's fees pursuant to 42 U.S.C. § 1988, and (c) such other and further relief as this Court deems necessary and proper.

## DEMAND FOR JURY TRIAL

Plaintiff Adamescu hereby demands a jury trial as to all issues triable by a jury.

Respectfully submitted,

                                     **The Harris Law Firm Group, P.A.**
                                     201 South Biscayne Blvd., Suite 2650
                                     Miami, Florida 33131
                                     Telephone:    305.536.6131
                                     Facsimile:    305.536.6130

                                     By:    ***/s/Robert N. Harris***
                                              Robert Newton Harris, Esq.
                                              Fla. Bar. No.: 87671
                                              robert@harrislawinfo.com